WAGNER v. OFFICE OF THE SHERIFF OF CUSTER COUNTY



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:WAGNER v. OFFICE OF THE SHERIFF OF CUSTER COUNTY

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 WAGNER v. OFFICE OF THE SHERIFF OF CUSTER COUNTY
2021 OK CIV APP 20
Case Number: 119009
Decided: 04/30/2021
Mandate Issued: 05/26/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 20, __ P.3d __

 


A. JAY WAGNER Plaintiff/Appellant,
v.
THE OFFICE OF THE SHERIFF OF CUSTER COUNTY, OKLAHOMA, Defendant/Appellee.
APPEAL FROM THE DISTRICT COURT OF
CUSTER COUNTY, OKLAHOMA
HONORABLE JILL C. WEEDON, JUDGE
AFFIRMED
Kevin K. Kemper, Guthrie, Oklahoma, for Plaintiff/Appellant,
Mart Tisdal, Luke Adams, TISDAL & O'HARA, Clinton, Oklahoma,
Pat O'Hara, Patrick O'Hara, Jr., W. Jason Hartwig, TISDAL & O'HARA, Oklahoma City, Oklahoma, Angela Marsee, District Attorney, Arapaho, Oklahoma,
Ricky McPhearson, Assistant District Attorney, Arapaho, Oklahoma, for Defendant/Appellee.
Bay Mitchell, Judge:
¶1 This appeal presents the following question: When a public body receives a request via email for records covered by Oklahoma Open Records Act, 51 O.S. §24A.1, et. seq ("the Act"), is that body required to respond and provide the records via email? Because we determine that the text of the statute requires a public body to do nothing more than make such records available, we answer in the negative.
BACKGROUND
¶2 The relevant facts are not in dispute. A. Jay Wagner is a professor of journalism in Milwaukee, Wisconsin. In June 2019, Professor Wagner sent a request for records to the defendant and appellant, the sheriff of Custer County, Oklahoma, pursuant to the Open Records Act. The records sought were not expansive, being the incident or initial offense reports generated by the sheriff's office covering just two days. It is undisputed that the relevant records were covered by the Act. The professor sent his request via email and asked that the pertinent records be returned "as a digital file ... and delivered via email."
¶3 According to the undisputed record, the sheriff looked for and found the relevant records but refused to deliver them to the professor via email or any other method, stating he was not required to do so under the Act. When the professor sought clarification as to the reason for the refusal, the sheriff responded as follows:
Under advisement of legal counsel, nothing in the Oklahoma Records Act requires me to mail or email records or documents to a requestor.
The law states that I am required to maintain business hours for the purpose of inspection, copying or the mechanical reproduction of records.
I am not refusing to search for your requested records, as I have done so, and they are ready for you or a representative to pick up at our office Monday through Friday, 8 a.m. to 4 p.m., excluding weekends and holidays.
¶4 Thereafter, the professor hired counsel and sued the sheriff, claiming a right to electronic delivery of records under the Act.[1] The sheriff moved for summary judgment, which the trial court granted, finding that no such right exists.[2]
STANDARD OF REVIEW
Whether summary judgment was properly entered is a question of law which we review de novo. In a de novo review, we have plenary, independent and non-deferential authority to determine whether the trial court erred in its application of the law and whether there is any genuine issue of material fact. Like the trial court, we examine the pleadings and summary judgment evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. We view the facts and all reasonable inferences arising therefrom in the light most favorable to the non-moving party.
Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 65, ¶6, 73 P.3d 871, 874 (citations omitted).[3]
ANALYSIS
¶5 The Oklahoma Open Records Act was enacted in 1985. 1985 Okla. Sess. Laws, ch. 355, §1. It is codified at 51 O.S. §24A.1 et seq. Although several portions of the Act have been updated at various times, its operative provisions, which we view as dispositive here, have not been meaningfully changed. Section 24A.5 provides: "All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours ...." 51 O.S. §24A.5. Similarly, §24A.8, which the parties agree applies specifically to the sheriff and the records requested here, requires that "[l]aw enforcement agencies shall make available for public inspection and copying, if kept, ... [a] chronological list of all incidents, including initial offense report information ...." Id. at §24A.8.
¶6 The professor invites us to convert these passive commands -- commands simply to make records available to the public -- into affirmative prescriptive requirements. However, neither the plain language of the directives nor the contextual clues left by the legislature throughout the Act support the professor's reading.
¶7 We look first to the words of the statute. Although the fundamental goal of statutory construction is to divine the intent of the legislature, we must search for that intent in the language of the statute. YDF, Inc. v. Schlumar, Inc., 2006 OK 32, ¶6, 136 P.3d 656, 658. Here the legislature invoked the passive voice to describe what a government body must do with regards to its records but did not indicate how the required result must be accomplished. This use of the passive voice strongly implies that the legislature did not intend to prescribe any precise method by which the records must be made available. The plain language of §24.5 and §24.8 commands public bodies to do nothing more than passively make records covered by the statute available for public inspection, copying, and reproduction. To require more is to add to the language of the Act, which we may not do. Assessments for Tax Year 2012 of Certain Properties Owned by Throneberry v. Wright, 2021 OK 7, ¶63, 481 P.3d 883, 908 ("When the language of a statute is plain and clear it will be followed by the Court, and when further inquiry is needed, this Court is 'not free to rewrite the statute.'").
¶8 The legislature confirmed this reading in another provision of the statute, which empowers each affected agency to enact its own procedural requirements in relation to how to accept and fulfill records requests. The Act states: "Except as may be required by other statutes, public bodies do not need to follow any procedures for providing access to public records except those specifically required by the Oklahoma Open Records Act." Id. at §24A.2. We are not free to ignore this statutory language. Fent v. Henry, 2011 OK 10, ¶11, 257 P.3d 984, 991 ("[A]ll [statutory] provisions must be given effect unless irreconcilable conflicts exist."). Although the professor's request in this case was simple and could have been easily complied with, it is not difficult to imagine far more complex and burdensome requests, both in terms of the number of responsive documents and the sheer volume of requests. The legislature's choice to allow each agency the flexibility to choose its own procedures on how to accept and process record requests is clear from the language of the statute and must be respected by this court.[4]
¶9 This is not to say that an agency's options as to its own procedures are without limits. However, the only specific guidance the Act provides as to how a public body must provide access is that the access must be "prompt" and "reasonable." 51 O.S. §24A.5(6).[5] Neither of these general requirements can transform the passive state of "be[ing] open," id. at §24A.5, or "mak[ing] available," id. at §24A.8, into the far more active requirement of responding to requests via email, which the professor seeks. Although an agency is entirely free to embrace requests through email, it is not required to do so. Certainly, the failure to do so cannot be viewed as inherently unreasonable. Although the office would be protected from requests that would "prevent excessive disruptions of its essential functions," id. at §24A.5(6), this protection does not somehow create an affirmative obligation on the agency to process records requests via email, or any other method. Again, the only requirement is that the records be made available during regular business hours. By holding his office open each weekday the sheriff complied with this requirement and thus complied with the statute.
¶10 Finally, we note that each of the professor's arguments against the above reading is unpersuasive. The professor refers numerous times to the self-stated policy of the Act, which is "to ensure and facilitate the public's right of access to and review of government records so they may efficiently and intelligently exercise their inherent political power," which is "inherent in the people," and who are "vested with the inherent right to know and be fully informed about their government." 51 O.S. §24A.2. This policy is not thwarted by our interpretation of the Act. Even if it were, policy goals, even laudable ones, must give way to unambiguous legislative commands. Toxic Waste Impact Group, Inc. v. Leavitt, 1988 OK 20, 755 P.2d 626, 630 ("Neither the Supreme Court nor a district court may expand the plain wording of a statute by construction where the legislature has expressed its intention in the statute as enacted. This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.") (footnotes omitted).
¶11 The professor also makes note of the many places in the Act that reference electronic records as evidence that the legislature intended to allow requests for records and fulfillment of the same via email. The conclusion does not follow from the premise. The Act might, and does, define a "record" to include an electronic file while simultaneously allowing an agency to determine for itself how it will accept and respond to requests for records. Although the legislature has the power to require what the professor seeks here, it has not done so.
¶12 The professor cites numerous cases he claims support his position, but none do. Most of the cases the professor cites concern the definition of "record" under the Act, or some other issue not presented here. See, e.g., Fabian & Associates, P.C. v. State ex rel. Dep't of Pub. Safety, 2004 OK 67, ¶19, 100 P.3d 703, 707 (holding that tape recordings of revocation hearings "are records subject to public inspection under the Open Records Act"); Citizens Against Taxpayer Abuse, Inc. v. City of Oklahoma City, 2003 OK 65, 73 P.3d 871 (holding that certain financial information of a private corporation in the hands of the city was not a record); Oklahoma Association of Broadcasters, Inc. v. City of Norman, 2016 OK 119, ¶30, 390 P.3d 689, 697 (holding that a prior version of §24A.8(A), which did not reference "copying," "must be read to allow copying as well as inspection of records"). Other cases concern federal law and have no application here. See, e.g., Brown v. Perez, 835 F.3d 1223 (10th Cir. 2016).
¶13 As explained above, the Oklahoma Open Records Act does not require a public body to email records requested pursuant to that Act. The Custer County Sheriff's Office thus did not violate the Act in the manner it replied to Plaintiff/Appellant's request. Accordingly, the trial court's summary judgment entered in favor of the sheriff is AFFIRMED.
GOREE, P.J., and PRINCE, J., concur.
FOOTNOTES
[1] The professor's lawsuit sought temporary and permanent injunctions, declaratory relief and attorney fees.
[2] At a pretrial hearing, the sheriff delivered the relevant records to the professor's counsel. Although this action mooted the professor's request for injunctive relief, his claim for declaratory relief -- i.e., an order declaring that the sheriff's refusal to deliver the relevant records to him was unlawful -- remained live. Lawson v. Curnutt, 2010 OK CIV APP 78, ¶8, 239 P.3d 192, 195.
[3] We acknowledge the professor's argument made under the First Amendment of the United States Constitution, which his counsel insists causes "the summary judgment standard [to] rise[] like the thermometer on a July afternoon in Oklahoma." R. 12, Summary Judgment Response, pg. 6. The professor's constitutional argument is clearly without merit. There is no constitutional right to the records at issue; the rights involved are statutory in nature. Houchins v. KQED, Inc., 438 U.S. 1, 15, 98 S. Ct. 2588, 2597, 57 L. Ed. 2d 553 (1978) ("Neither the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control."); Shero v. City of Grove, Oklahoma, 510 F.3d 1196, 1202 (10th Cir. 2007) (same; interpreting the Oklahoma Open Records Act). Accordingly, the trial court correctly declined the professor's request to apply any heightened scrutiny in her summary judgment review. We do the same on appeal.
[4] Other portions of the statute confirm our reading. See, e.g., 51 O.S. §24A.5 ("All records of public bodies and public officials shall be open to any person for inspection, copying, or mechanical reproduction during regular business hours ...."); Id. ("Any public body establishing fees under this act shall post a written schedule of the fees at its principal office and with the county clerk."); Id. ("At least one person shall be available at all times to release records during the regular business hours of the public body."); and Id. at §24A.6 ("If a public body or its office does not have regular business hours of at least thirty (30) hours a week, the public body shall post and maintain a written notice at its principal office and with the county clerk ....").
The attorney general, in interpreting a prior version of §21A.5 that did not reference the option to post records on the internet, agreed with this interpretation, even going a step farther in declaring that the law required an agency to make records available at its physical office, even if they were available elsewhere.
[W]e find the Legislature intended that a public body must make its records available to the public at its office, either in original or approved duplicated format. The fact that a public body makes its records available at some other physical location or through the world wide web does not affect the public body's obligation to make its records available at its office ....
It is our opinion that the 'prompt, reasonable access' to records that the public must be provided under the Act indicates the Legislature's intent that the public body's records shall be maintained and available at the office where the records are located in the ordinary course of business.
2005 OK AG 3, ¶¶7, 8.
In 2016, the legislature changed this result, but only in regards to the sufficiency of an agency's decision to make records available on the internet. They added the following provision: "Any public body which makes the requested records available on the Internet shall meet the obligation of providing prompt, reasonable access to its records ...." 2016 Okla. Sess. Laws, ch. 370, §1.
[5] The full text of this provision, as most recently amended in 2017, is as follows:
A public body must provide prompt, reasonable access to its records but may establish reasonable procedures which protect the integrity and organization of its records and to prevent excessive disruptions of its essential functions. A delay in providing access to records shall be limited solely to the time required for preparing the requested documents and the avoidance of excessive disruptions of the public body's essential functions. In no event may production of a current request for records be unreasonably delayed until after completion of a prior records request that will take substantially longer than the current request. Any public body which makes the requested records available on the Internet shall meet the obligation of providing prompt, reasonable access to its records as required by this paragraph ....
51 O.S. §24A.5(6).




 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Attorney General's Opinions
 Cite
Name
Level

 2005 OK AG 3, Question Submitted by: The Honorable Mike Reynolds, State Representative, District 91
Cited
Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2010 OK CIV APP 78, 239 P.3d 192, LAWSON v. CURNUTT
Discussed
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 20, 755 P.2d 626, 59 OBJ 599, Toxic Waste Impact Group, Inc. v. Leavitt
Discussed
 2003 OK 65, 73 P.3d 871, CITIZENS AGAINST TAXPAYER ABUSE, INC. v. CITY OF OKLAHOMA CITY
Discussed at Length
 2004 OK 67, 100 P.3d 703, FABIAN & ASSOCIATES, P.C. v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
 2006 OK 32, 136 P.3d 656, YDF, INC. v. SCHLUMAR, INC.
Discussed
 2011 OK 10, 257 P.3d 984, FENT v. HENRY
Discussed
 2016 OK 119, 390 P.3d 689, OKLAHOMA ASSOC. OF BROADCASTERS, INC. v. CITY OF NORMAN
Discussed
 2021 OK 7, IN THE MATTER OF THE ASSESSMENTS FOR TAX YEAR 2012 OF CERTAIN PROPERTIES
Cited
Title 51. Officers
 Cite
Name
Level

 51 O.S. 24A.1, Short Title
Discussed
 51 O.S. 24A.2, Political Power - Public Policy and Purpose of Act
Cited
 51 O.S. 24A.5, Open and Confidential Records
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA